# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### Orlando Division

| | | |
|---|---|---|
| POUND LAW LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | _____ |
| v. | ) | |
| | ) | |
| KATHI VIDAL, in her capacity as Director of | ) | |
| the United States Patent and Trademark Office; | ) | |
| and | ) | |
| | ) | |
| THE UNITED STATES PATENT AND | ) | |
| TRADEMARK OFFICE | ) | |
| | ) | |
| Serve: | ) | |
| Office of the General Counsel | ) | |
| U.S. Patent and Trademark Office | ) | |
| Madison Blvd. East, Room 10B20 | ) | |
| 600 Dulany Street | ) | |
| Alexandria, VA  22314 | ) | |
| | ) | |
| Attorney General of the United States | ) | |
| Main Justice Building | ) | |
| 10th & Constitution Ave, NW | ) | |
| Washington, DC 20530 | ) | |
| | ) | |
| U.S. Attorney for the Middle Dist. of Fl. | ) | |
| 400 W. Washington Street #3100 | ) | |
| Orlando, FL  32801, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Pound Law LLC ("Plaintiff"), by its undersigned attorneys, Kilpatrick Townsend & Stockton LLP and Morgan & Morgan P.A., alleges the following for its Complaint against Defendants Kathi Vidal, in her official capacity as the Director of the United States Patent and Trademark Office (the "Director"), and the United States Patent and Trademark Office (the "PTO"):

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Pound Law, LLC is a Florida limited liability company with an office at 20 North Orange Avenue, Suite 1600, Orlando, Florida 32801.

2.      Kathi Vidal is the Director of the U.S. Patent and Trademark Office with an address at P.O. Box 1450 Alexandria, Virginia 22313-1450.

3.      The PTO is a federal agency within the United States Department of Commerce.  The agency is located at 600 Dulany Street, Alexandria, Virginia 22314.

4.      This Court has jurisdiction over the subject matter of this action pursuant to Section 21(b) of the U.S. Trademark Act of 1946 (the "Lanham Act"), as amended, 15 U.S.C. § 1071(b), which provides that a party dissatisfied with a final decision of the Trademark Trial and Appeal Board ("TTAB") may institute a new civil action in a Federal District Court challenging such decision.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(C).

## **FACTUAL BACKGROUND**

6.      Plaintiff, and/or its predecessors and Plaintiff's licensee Morgan & Morgan P.A. ("Morgan & Morgan"), have continually used the service mark #LAW in commerce since at least as early as 2006.

7.      Morgan & Morgan has spent tens of millions of dollars in advertising the #LAW mark in the United States, including in television and radio advertising, social medial advertising, transit advertising, including busses, and cabs and billboard advertising.

8.      The primary motivation of Plaintiff and Morgan & Morgan in adopting and using the #LAW mark was to develop a mnemonic/vanity telephone number that would also be a distinctive brand solely associated with legal services from a single source and which consumers could easily recall and utilize when seeking such legal related services.

9.      The advertising conducted by Morgan & Morgan since August 2017 has been designed to educate the relevant public as to the existence of #LAW both as a mnemonic/vanity telephone number and as a distinctive brand uniquely associated with Morgan & Morgan as the source of the legal services provided.

10.     Because of the extensive advertising and promotional activities of Morgan & Morgan, the #LAW mark has become widely recognized by the relevant public as a distinctive brand and as a mnemonic/vanity telephone number mark uniquely associated with the services of Morgan & Morgan, and that widespread recognition and distinctiveness inure to Plaintiff's benefit as a matter of law under 15 U.S.C. § 1065 because of Plaintiff's license to Morgan & Morgan.

11.     Since August 2017, Morgan & Morgan has advertised and promoted the #LAW mark in a large and continually expanding number of markets currently in more than 20 states.  This advertising has included:

- Over 10,000,000 television and radio spots.
- Over 1,500 billboards.
- Over 2,000 cab toppers.
- Over 850 buses.

12.     Morgan & Morgan has also aggressively advertised and promoted the #LAW mark on digital channels including YouTube, Google, and Pandora.  For example, since August 2017, Morgan & Morgan's advertisements on YouTube featuring the #LAW mark have received over 1 billion impressions.

13.     Morgan & Morgan has expended hundreds of millions in connection with the #LAW mark advertising and promotional efforts described herein.

14.    For each of 2018-2022, Morgan & Morgan expended tens of millions of dollars annually airing television ads featuring the #LAW mark.

15.    As to other advertising of the #LAW mark (including billboard, bus, transit, digital and print) conducted since August 2017, Morgan & Morgan has expended tens of millions of dollars.

16.    Morgan & Morgan's radio spots include the #LAW mark, which is spoken as "Pound Law".  Since August 2017, Morgan & Morgan has expended tens of millions of dollars in connection with that radio spot advertising.

17.    Since August 2017, hundreds of thousands of consumers have initiated contact with Morgan & Morgan inquiring about legal services by calling or dialing #LAW on their cell phone.  From these contacts, Morgan & Morgan has yielded thousands of new clients for a wide variety of legal services, that may include personal injury, workers compensation, premises liability, insurance disputes, consumer protection actions, social security, nursing home abuse, mass tort, employment law, medical malpractice, labor, veterans disability, complex litigation, warranty, and product liability.

18.    Morgan & Morgan's advertising of the #LAW® mark in 2020 includes the ® designation.  There consequently is no reason the relevant consuming public would call the #LAW® mnemonic/vanity telephone number

other than to reach Morgan & Morgan to provide legal services. Use of the ®

designation with the #LAW® mark by Morgan & Morgan reinforces to the

relevant consuming public that #LAW® is a mark and not merely a hashtag or

merely descriptive verbiage. That #LAW® is perceived by the relevant consuming

public as a service mark is also reinforced by other advertising of the #LAW®

mark by Morgan & Morgan, which prominently includes the statement "#LAW®

is a trademark of Morgan & Morgan". Morgan & Morgan has expended tens of

millions of dollars in connection with advertising featuring that statement and ®

designation. That advertising includes television and digital channel advertising,

as well as approximately 1,500 billboards, which are currently displayed in at least

fifteen (15) states.

## #LAW U.S. APPLICATION HISTORY

### A.   FIRST #LAW MARK APPLICATION (WHICH MATURED INTO U.S. REG. NO. 3,240,931 ON THE SUPPLEMENTAL REGISTER)

19.    On April 6, 2006, one of Plaintiff's predecessors, Bay Area Travel,

Inc., filed use-based federal service mark application Serial No. 78/855,924 for the

#LAW mark  for "providing legal services; legal information; lawyer referral

services; advertising cooperative services for the legal industry; advertising

agency, marketing and promotional services rendered to the legal industry" in

International Class 35.

20.     On August 15, 2006, the PTO issued an Office Action preliminarily refusing Serial No. 78/855,924 on the ground that the #LAW mark was allegedly "merely descriptive" of the services recited in the application.

21.     In support of that "merely descriptive" refusal, the PTO stated the following:

> The mark immediately describes a feature of the services, namely, that customers can dial #LAW on their mobile phone keypad to access the applicant's services.  As the applicant's specimen of use clearly illustrates, "dial #LAW from your Cingular phone to enter our Lawyer Referral Network."  The Trademark Trial and Appeals Board has affirmed that a term that consists of a merely descriptive term with numerals in the form of an alphanumeric telephone number is merely descriptive under Trademark Act Section 2(e)(1).  *See In re Page*, 51 U.S.P.Q.2d 1660 (T.T.A.B. 1999); TMEP § 1209.03(l).   In line with the case law, the addition of the descriptive term LAW with the numerical equivalent "#" symbol is merely descriptive of under Section 2(e)(1).  The applicant's specimen shows that much like dialing a descriptive number such as 1-800-LAW-****, the consumer would simply dial #LAW on a mobile phone to access the applicant's services.  Accordingly, registration is refused.

The PTO also suggested that the applicant seek registration of the #LAW mark on the Supplemental Register, which is reserved for applied-for marks that lack distinctiveness at the time of registration but that otherwise are capable of functioning as marks.

22.     Bay Area Travel, Inc.'s February 12, 2007, response to the Office Action amended its application to seek registration of the #LAW mark on the Supplemental Register.

23.     On May 8, 2007, the PTO issued U.S. Reg. No. 3,240,931 on the Supplemental Register for the #LAW mark.

24.     On or about September 9, 2010, an assignment of U.S. Reg. No. 3,240,931 on the Supplemental Register for the #LAW mark from Bay Area Travel, Inc. to Easy Dial, LLC was recorded with the PTO.

25.     On or about May 7, 2013, Easy Dial, LLC filed an Affidavit of Use under Section 8 of the Lanham Act,  15 U.S.C. § 1058, to maintain U.S. Reg. No. 3,240,931 on the Supplemental Register for the #LAW mark.

26.     On or about June 7, 2013, the PTO issued a Notice of Acceptance under Section 8, which maintained U.S. Reg. No. 3,240,931 on the Supplemental Register in force.

27.     On or about January 31, 2014, an assignment of U.S. Reg. No. 3,240,931 on the Supplemental Register from Easy Dial, LLC to Plaintiff was recorded with the PTO.

28.    On January 3, 2017, Plaintiff filed an Affidavit of Use under Section 8 of the Lanham Act and an Application for Renewal under Section 9 of the Act, 15 U.S.C. §§ 1058, 1059, to maintain U.S. Reg. No. 3,240,931 on the Supplemental Register for the #LAW mark.

29.    On or about March 2, 2017, the PTO issued a Notice of Acceptance under Section 8 and a Notice of Registration Renewal under Section 9, which maintained U.S. Reg. No. 3,240,931 on the Supplemental Register for the #LAW mark in force.

30.    At no time during the prosecution of the original application that matured into U.S. Reg. No. 3,240,931 on the Supplemental Register for the #LAW mark or its maintenance and renewal in 2013 and 2017, respectively, did the PTO ever take the position that the #LAW mark failed to function as a service mark.

### B.    CURRENT #LAW MARK APPLICATION (SERIAL NO. 87/724,338)

31.    After successfully renewing U.S. Reg. No. 3,240,931 on the Supplemental Register, Plaintiff began to pursue a new application to register the #LAW mark on the PTO's Principal Register.

32.    On December 8, 2017, Plaintiff filed use-based federal service mark application Serial No. 87/724,338 for the #LAW mark for "providing legal services; legal referral services."  That application sought registration of the #LAW

mark on the Principal Register under Section 2(f) of the Lanham Act, 15 U.S.C.

§ 1052(f), which allows the PTO to accept as prima facie evidence of the

distinctiveness required for registration on the Principal Register an averment that

the applicant has continuously used the applied-for mark on a substantially

exclusive basis for the preceding five years.  In support of its Section 2(f) claim,

Plaintiff stated:

> The mark has become distinctive of the goods/services through
> the Plaintiff's substantially exclusive and continuous use of the
> mark in commerce that the U.S. Congress may lawfully
> regulate for at least the five years immediately before the date
> of this statement.

33.     One of the specimens submitted with Serial No. 87/724,338

evidencing use of the #LAW mark was identical to that submitted and approved by

the PTO in connection with the renewal of U.S. Reg. No, 3,240,931 on the

Supplemental Register on or about March 2, 2017.

34.     On April 4, 2018, Examining Attorney Barney Charlon issued an

Office Action refusing registration on the ground that the #LAW service mark was

"merely descriptive."  In doing so, Mr. Charlon remarked:

> The applied for mark consists of the wording "LAW"
> immediately preceded by a hash symbol (#)… Further, this
> evidence shows such wording is merely descriptive of
> Plaintiff's services because they comprise legal and legal
> referral services.

April 4, 2018, Office Action at 2 (emphasis added).  Mr. Charlon further

characterized the #LAW service mark both as a "hashtag", , a word or phrase

preceded by the hash symbol or pound sign "#" that is used as an online social

media search term, and as a telephone number.  *Id.*  With respect to the latter

characterization, Mr. Charlon stated:

> In the present case, the hashtag combined with the descriptive
> wording adds no source identifying significance but retains
> only its significance as a means of contacting Plaintiff on a
> mobile phone.

*Id.* at 2.  Mr. Charlon then turned to Plaintiff's evidence of acquired distinctiveness

and found that Plaintiff's reliance on five years of substantially exclusive and

continuous use alone was insufficient to show acquired distinctiveness.  *Id.* at 2-3.

35.     On August 2, 2018, Plaintiff responded to the April 4, 2018, Office

Action and provided substantial extrinsic evidence demonstrating that the #LAW

service mark had acquired distinctiveness, in addition to its continued reliance on

five years of substantially exclusive and continuous use under Section 2(f).  See

August 2, 2018, Response to Office Action and Declaration of Brian Kempner.

36.     On August 28, 2018, Mr. Charlon issued a new Office Action.  In

addition to raising several technicalities as to the proper classification of services

and the original specimen, Mr. Charlon reasserted his refusals on the bases of mere

descriptiveness and insufficient evidence of acquired distinctiveness.  August 28,

2018, Office Action at 3-4.  Mr. Charlon also continued to assert that #LAW was a

hashtag and that the relevant public would understand the #LAW service mark as

constituting a hashtag used as an online social media search term.  *Id.*  He did not

repeat his prior acknowledgment that #LAW also served as a means for contacting

Plaintiff on a mobile phone.

37.     On February 28, 2019, Plaintiff responded to the August 28, 2018,

Office Action.  Therein Plaintiff argued: (1) the #LAW mark was a telephone

number and not a hashtag; (2) the "#" component of the #LAW mark corresponded

to the pound symbol on a telephone keypad; (3) all of the advertising of the #LAW

mark reinforced that it was a telephone number and not a hashtag; and (4) Section

1209.03(1) of the PTO's own internal procedural manual, the Trademark Manual

of Examination Procedure  ("TMEP"), expressly recognizes that mnemonic

telephone number marks are registrable.  See February 28, 2019, Response to

Office Action at 1-6, 8.

38.     Plaintiff also provided a substantial amount of additional extrinsic

evidence demonstrating that the #LAW mark had acquired sufficient

distinctiveness to merit registration on the Principal Register.  *See id* at 6-10 and

Second Declaration of Brian Kempner.  Plaintiff further traversed Mr. Charlon's

suggestion that use of the #LAW mark has not been substantially exclusive and

addressed the remaining informalities raised in the August 28, 2018, Office Action. *See id.* at 6-15.

39.     On April 12, 2019, after considering Plaintiff's submission, Mr. Charlon formally withdrew all of his refusals to register and approved the #LAW mark for publication on the Principal Register.  *See* Exhibit 1 to December 10, 2019, Response to Office Action.

40.     Plaintiff's counsel did not receive any further information regarding the publication of the #LAW mark, and, on June 10, 2019, to Plaintiff's counsel surprise, a new Office Action issued.  Plaintiff's counsel immediately telephoned Mr. Charlon and learned that Mr. Charlon's supervisor, Zachary Cromer, had disagreed with Mr. Charlon regarding the registrability of the #LAW mark and had insisted that a new Office Action issue.

41.     The June 10, 2019, Office Action asserted several new grounds for refusal never before raised by the PTO.  After previously contending that the #LAW mark was at most merely descriptive, the PTO issued new refusals asserting that the #LAW mark was generic and failed to function as a mark.   In support of the genericness refusal, Mr. Charlon continued to assert that #LAW was an online social media hashtag and not a telephone number, as he remarked:

> The previously attached evidence from the Internet shows that the wording "#LAW" in the applied for mark means a hashtag followed by the generic term LAW.  Thus, the relevant public would understand this designation to refer primarily to that genus of services because a hashtag will usually be perceived as part of an online social media search term . . .

June 10, 2019, Office Action at 2.

42.   In support of the failure-to-function refusal, Mr. Charlon stated only that the #LAW mark "did not function as a service mark because it would be perceived by consumers only as a hashtag followed by the generic term LAW."  *Id.* at 3. Mr. Charlon also reasserted his earlier refusals on the bases of mere descriptiveness and insufficient evidence of secondary meaning.  *Id.* at 2-3.

43.   Plaintiff responded to the June 10, 2019, Office Action on December 10, 2019, and traversed the refusals for genericness and insufficient evidence of acquired distinctiveness.  *See* December 10, 2019, Response to Office Action at 2-13, Exhibits 2-3 thereto, and Third Declaration of Brian Kempner.  As to Mr. Charlon's failure-to-function refusal, Plaintiff also pointed out that the overwhelming evidence of record established that the relevant public perceived the #LAW mark as being uniquely associated with a single source, namely Morgan & Morgan.  *Id.* at 13-15.  In that regard, the Examining Attorney assigned to the #LAW application that matured into U.S. Reg.  No. 3,240,931 on the Supplemental Register previously had found that the #LAW service mark was, at most, merely

descriptive, without any indication that it could not function as a service mark.  *See* April 15, 2006, Office Action, attached as Exhibit 2 to December 10, 2019, Response to Office Action.  *Id.* at 15 (emphasis added).

44.     Plaintiff's December 10, 2019, response further amended its identification of services to read as follows:

> Legal referral services rendered to consumers seeking to retain a lawyer to represent them in a legal matter initiated by phone in International Class 35.

> Providing legal services to consumers seeking to retain a lawyer to represent them in a legal matter initiated by phone in International Class 45.

45.     On January 8, 2020, Mr. Charlon issued a new Office Action withdrawing his refusals to register based on genericness and failure-to-function. The only issue he raised was a request that Plaintiff formally amend its Application to indicate its reliance on five years of substantially exclusive and continuous use in support of its Section 2(f) claim.  January 8, 2020, Office Action at 2.

46.     On January 13, 2020, Plaintiff submitted an additional declaration to that effect.  See Fourth Declaration of Brian Kempner.

47.     On February 6, 2020, Mr. Charlon again approved the #LAW mark for publication for opposition on the Principal Register.  See Exhibit 1 to May 11, 2020, Response to Office Action.  However, after passage of an additional month

without issuance of a formal Notice of Publication, Plaintiff's counsel contacted Mr. Charlon and learned that Mr. Cromer was again reviewing the application file of the #LAW mark.

48.     Plaintiff then requested a formal interview with Mr. Cromer pursuant to TMEP § 709.  Mr. Charlon subsequently advised Plaintiff's counsel that Mr. Cromer was agreeable to an interview by phone and provided his telephone number.  Plaintiff's counsel left several voice-mail messages for Mr. Cromer attempting to schedule the interview.  Mr. Cromer neither responded to those messages nor contacted Plaintiff's counsel regarding the requested interview.

49.     TMEP § 709.04 provides that examining attorneys must respond to telephone messages within a reasonable time.  Here, Mr. Cromer failed to respond at all to the telephone messages of Plaintiff's counsel.

50.     After failing to hear anything further from Mr. Cromer about the requested interview, Plaintiff's counsel was surprised to learn that, at Mr. Cromer's direction, a new Office Action had issued dated March 14, 2020.  That Office Action did not mention Plaintiff's counsel's interview request.  Instead, it advised Plaintiff that all of the previously withdrawn refusals were being reinstated (*i.e.*, genericness, mere descriptiveness, insufficient evidence of secondary meaning, and failure-to-function).  *See* March 14, 2020, Office Action at 2-3.

51.     The March 14, 2020, Office Action was substantially identical in content to the June 10, 2019, Office Action with one important difference—the PTO no longer contended that #LAW was a "hashtag," but instead conceded that #LAW was a telephone number.  *Id.*  For example, Mr. Charlon's failure-to-function refusal indicated that #LAW "does not function as a service mark because it would be perceived by consumers merely as a **phone number**."  *Id.* at 3.  No new evidence supporting any of Mr. Charlon's reinstated refusals was submitted.

52.     Plaintiff responded to the March 14, 2020, Office Action on May 11, 2020.  That response noted the PTO's concession that #LAW was a telephone number and reminded the PTO of the Federal Circuit's controlling authority on the registrability of mnemonic telephone numbers, *see In re Dial A Mattress Operating Corp.*, 240 F.3d 1341 (Fed. Cir. 2001), as well as TMEP §1209.03(l), which specifically addresses the registrability of mnemonic telephone numbers. May 11, 2020, Response to Office Action at 1-6.

53.     Plaintiff also traversed the PTO's failure-to-function refusal by pointing out that: (1) the refusal was at odds with the foregoing authority; (2) the specimens and examples of use of the #LAW mark submitted during the prosecution of Serial No. 87/724,338 demonstrated that the #LAW mark designated the origin of the legal services provided by Morgan & Morgan

("Plaintiff's licensee"); and (3) the specimens and examples of use relied upon by Plaintiff were consistent with those that had long been accepted by the PTO as demonstrating trademark use of other mnemonic telephone number marks.  May 11, 2020, Response to Office Action at 20-21, Exhibit 6 thereto, and Exhibits 4-5 to Third Declaration of Brian Kempner.

54.    On July 22, 2020, despite having twice approved Serial No. 87/724,338 for publication, Mr. Charlon issued the Final Refusal in which he reasserted all of his refusals.  Although Mr. Charlon's arguments in support of those refusals included those set forth in the March 14, 2020, Office Action, Mr. Charlon also included new arguments and evidence.

55.    On January 20, 2021, Plaintiff filed a Request for Reconsideration consisting of the Sixth Declaration of Brian Kempner (and Exhibits 1-15) and Declaration of George Carapella (and Exhibits A-E).  Plaintiff intended this evidentiary submission to rebut the new arguments and evidence first introduced by Mr. Charlon in the Final Refusal.

## C.    INSTITUTION OF THE APPEAL

56.    On January 21, 2021, Plaintiff filed its Notice of Appeal with the Trademark Trial and Appeal Board, filing its Opening Brief on March 22, 2021. On April 5, 2021, the TTAB forwarded Plaintiff's Opening Brief to the Examining

Attorney. On the same date, the TTAB suspended the Appeal retroactively from January 21, 2021, and remanded Serial No. 87/724,338 to the Examining Attorney to consider Plaintiff's evidentiary submission.

57.     On June 9, 2021, Mr. Charlon issued a Request for Reconsideration After Final Appeal Denied ("First Denial") in which he **withdrew all of his earlier refusals to register other than the  failure-to-function refusal**, which was "maintained and continued."  First Denial at 2.  In support of the failure-to-function refusal, Mr. Charlon relied on new evidence not previously introduced during the lengthy course of prosecution of Serial No. 87/724,338.

58.     On June 23, 2021, Plaintiff filed a Request for Remand to Examining Division and to Suspend Appeal for the express purpose of submitting additional evidence in response to Mr. Charlon's new evidence in his June 9, 2021, denial. *See* Request for Reconsideration, Exhibits A and B.

59.     On January 31, 2021, a new examining attorney, Natalie L. Kenealy, denied Plaintiff's Request for Reconsideration, again maintaining only the failure-to-function refusal.  Ms. Kenealy did not support the denial with any new evidence. On February 2, 2021, the TTAB resumed the Appeal and permitted Plaintiff until April 2, 2022, to submit a supplemental brief, which Plaintiff did on March 4, 2022.

**D.**   **THE TTAB DECISION**

60.    On November 9, 2022, following briefing, the TTAB affirmed the refusal to register Plaintiff's #LAW mark on the Principal Register on the asserted ground that #LAW failed to function as a service mark.

61.    A mnemonic/vanity telephone number is one consisting of a combination of symbols, numbers, words, or abbreviations, all corresponding to what can be found on a telephone keypad.  Examples of mnemonic/vanity telephone numbers include those consisting of numbers and/or symbols such as the "#" symbol or "*" symbol followed by words.

62.    The evidence of record in the appeal reflects that, for at least the past 20+ years, the PTO has had a long-standing practice of allowing registration of mnemonic/vanity telephone number marks, including mnemonic/vanity telephone number marks beginning with the "#" symbol, on the Supplemental or Principal Register.  The registrations allowed by the PTO of mnemonic/vanity telephone number marks beginning with the "#" symbol include at least one in which the application was filed after that of Plaintiff.  *See* Reg. 6,030,456 of #WIN mark.

63.    TMEP § 1209.03(1) provides that telephone numbers constitute registrable subject matter.

64.     The TTAB decision that the mnemonic/vanity telephone number mark #LAW fails to function as a service mark is in derogation of the PTO's own published public policy that telephone numbers consisting of a merely descriptive term with numerals in the form of an alphanumeric telephone number are registerable subject matter and of long-standing PTO practice as to the registrability of mnemonic/vanity telephone number marks.

65.     In denying Plaintiff's appeal, the TTAB did not dispute the evidence presented (as of the conclusion of the examination process), that the PTO over the past 20+ years has adopted a long-standing practice as to the registrability of mnemonic telephone number marks and has repeatedly allowed registration of those marks on the Principal and Supplemental Register, including mnemonic/vanity telephone number marks beginning with the "#" symbol.

66.     In denying Plaintiff's appeal, the TTAB did not dispute that there was no evidence of record of a mnemonic telephone number mark, including a mnemonic/vanity telephone number mark beginning with the "#" symbol, ever being finally refused by any court, the TTAB or the Examining Division of the PTO for failure-to-function as a mark.

67.     In denying Plaintiff's appeal, the TTAB did not dispute the evidence presented (as of the conclusion of the examination process), that the specimens and

other evidence of use submitted by Plaintiff during the prosecution of the

application of Plaintiff's #LAW mark are wholly consistent with what the PTO has

accepted for the past 20+ years as demonstrating service mark use of a

mnemonic/vanity telephone number mark including mnemonic/vanity telephone

number marks beginning with the "#" symbol.

68.    In denying Plaintiff's appeal, the TTAB did not dispute that Plaintiff's

U.S. Reg. No. 3,240,931 on the Supplemental Register for the #LAW mark is valid

and subsisting.

69.    Section 45 of the Trademark Act defines "trademark" and "service

mark" as "any word, name, symbol, or device or any combination thereof … used

by a person … to identify and distinguish" goods or services, respectively, "and to

indicate the source" of the goods or service, "even if that source is unknown".  15

U.S.C. § 1127.

70.    TMEP § 1301.02(a) provides that to function as a service mark, a

designation must be used in a manner that would be perceived by purchasers as

identifying and distinguishing the source of services recited in the application.

71.    In denying Plaintiff's appeal, the TTAB correctly acknowledged that

in analyzing whether a proposed mark functions as a source identifier, the PTO

focuses on the perception of the relevant public.  The PTO looks to the applicant's

specimens and other evidence of record showing how the applicant actually uses the designation in the marketplace to determine how the relevant public would perceive the designation.

72.    In this case, the identification of services in Plaintiff's #LAW mark application  establishes that the relevant public consists of consumers seeking to retain a lawyer to represent them in a legal matter initiated by phone.  The relevant public vocalizes Plaintiff's #LAW mark as "Pound Law" and not as "Hashtag Law".

73.    TMEP § 1301.02(a) further provides factors that the PTO should consider in determining whether the asserted mark functions as a service mark, including whether the wording claimed as a mark is physically separable from textual matter, whether the mark is displayed in capital letters or is enclosed in quotation marks, and the manner in which the mark is used in relation to other material on the specimen.

74.    In denying Plaintiff's appeal, the TTAB did not dispute the evidence presented (as of the conclusion of the examination process) of the following usage by Plaintiff and/or Morgan & Morgan of the #LAW mark including (1) the mark's "prominent display", (2) use of capitalization, (3) use of stylization, (4) use of the wording "the #LAW logo and name are the registered trademarks of Pound Law,

LLC", the ® symbol, and the wording "#LAW® is a trademark of Morgan and

Morgan", and (5) use of the #LAW mark in a logo form physically separated from

other elements, with different colors for the "#" and "LAW" elements.

75.     As to the function and significance of the ® symbol on the issue of

consumer perception, the PTO has stated "the ® symbol indicates that you have

registered your trademark with the United States Patent and Trademark Office.  It

puts the public on notice that your mark is registered."    USPTO Trademark

FAQs, USPTO.gov (May 14, 2022), https://www.uspto.gov-learning-

resources/trademark-faqs.

76.     In denying Plaintiff's appeal, the TTAB failed to consider the impact

of Plaintiff and Morgan & Morgan's use of the ® symbol on consumer perception

of the relevant public.  The TTAB further failed to consider the impact of Plaintiff

and Morgan & Morgan's use of "the #LAW logo and name are registered

trademarks of Pound Law, LLC" and "#LAW® is a trademark of Morgan &

Morgan" on consumer perception of the relevant public.

77.     One of the specimens of the #LAW mark submitted by Plaintiff in

2017 in connection with Application Serial No. 87/724,338 that contains the

statement "the #LAW logo and name are registered trademarks of Pound Law,

LLC" (which both the PTO and the TTAB now contend does not evidence service

mark use of the #LAW mark) is **identical** to the renewal specimen that the PTO

accepted in 2017 as evidence of service mark use of the #LAW mark in connection

with U.S. Reg. No. 3,240,931 on the Supplemental Register.  *See* PTO Decision at

37.



Renewal Specimen for Reg. No. 3,240,931

Specimen Supporting Application Serial No. 87/724,338



78.     The TTAB's conclusion as to consumer perception of the relevant public seeks to discredit or discount entirely Plaintiff's evidence of service mark use of the #LAW mark.

79.     The TTAB's consumer perception analysis is faulty as it is based on misquoting terminology, "cherry picking" other wording and ignoring all of Plaintiff's evidence of service mark use, including the evidence of service mark use of record of the use of the #LAW mark on the face of the documents upon which the TTAB relies.

80.     The U.S. Supreme Court in ruling against the PTO in *U.S. Pat. &*
*Trademark Office v. Booking.com,* 140 S. Ct. 2298 (2020), established a
framework for analyzing consumer perception.

81.     In denying Plaintiff's appeal, the TTAB erred in failing to apply the
consumer perception framework established in *U.S. Pat & Trademark Office v.*
*Booking.com* in analyzing the registrability of Plaintiff's #LAW mark.

82.     In denying Plaintiff's appeal, the TTAB correctly noted that "the
important question is not how readily a mark will be noticed but whether, when
noticed, it will be understood as identifying and indicating the source of the
services."  TMEP § 1301.02.

83.     The TTAB's consumer perception analysis is faulty to the extent it is
based on the contention that consumer perception of #LAW as a service mark
would not be "substantially influenced" by the following statement appearing at
the bottom of the page of several of Plaintiff's specimens of use: "The #LAW logo
and name are registered trademarks of Pound Law, LLC" because that statement is
allegedly "visually minimal."  *See* PTO Decision at 36.

84.     The TTAB's emphasis on the size of the statement on Plaintiff's
specimens that "The #LAW logo and name are registered trademarks of Pound
Law, LLC" is inconsistent with TMEP § 1301.02 and prior precedent of the

Federal Circuit and its predecessor court.  *See, e.g., In re Singer*, 255 F.2d 939

(C.C.P.A. 1958).

85.    A service mark need not be displayed in any particular size or degree

of prominence.  It only has to be used in a way making a commercial impression

separate and apart from the other elements of the advertising or material on which

it is used, such that it will be recognized by the relevant public as a source

identifier.  TMEP § 1301.02.

86.    The PTO relied upon *In re Singer* in its Examiner's Brief in this

appeal.  Examining Attorney's Appeal Brief at 12.

87.    The TTAB's consumer perception analysis is faulty to the extent it is

based on a contention in this appeal that "the presence of the federal registration

symbol [on Plaintiff's specimen and other evidence of use] cannot transform an

otherwise unregistrable designation into a registrable mark."  *See* PTO Decision at

36.  The undisputed evidence of record is that #LAW is a registrable mark as

evidenced by U.S. Reg. No. 3,240,931 on the Supplemental Register, which is

valid and subsisting.

88.    Among the specimens and "other evidence" Plaintiff submitted during

prosecution of the #LAW mark application establishing service mark use by

Morgan & Morgan was the following:







These specimens and "other evidence" demonstrate service mark use of the #LAW mark.

89.     These specimens and "other evidence" are consistent with what the PTO has repeatedly recognized as demonstrating service mark use of mnemonic/vanity telephone number marks including those beginning with the "#" symbol, including the following:





Each of the foregoing examples shows service mark use of the subject mark.

90.     The TTAB's contention that Plaintiff's specimens and other evidence that use the #LAW mark in the context of "commands to call or dial the number on a cell phone" fails to demonstrate service mark use is inconsistent with long-standing practice of the PTO that specimens with such commands show service mark use.  *See* PTO Decision at 28 and ¶ 89, *supra*.

91.     Both the TTAB and PTO contend Morgan & Morgan's #LAW mark "multimedia ads consistently refer to the source of the legal services provided by Morgan & Morgan."  PTO Decision at 28, 30.

92.     Both the TTAB and PTO contend that in each instance where Plaintiff's #LAW mark is depicted in the specimens of use and other evidence of

record there is a solicitation for consumers to use the wording #LAW to reach

Morgan & Morgan.  PTO Decision at 26.

93.    Both the TTAB and PTO contend that Plaintiff's specimen evidence

shows that the #LAW mark is in the nature of a vanity calling code that can be

dialed to reach Plaintiff and Plaintiff's subsidiaries including Morgan & Morgan.

*See* Examining Attorney's Appeal Brief at 6.

94.    Both the TTAB and PTO view this appeal as originating in a

"specimen-based determination that consumers would not perceive [Plaintiff's] use

of #LAW as a source indicator but rather **only** as a means to contact [Plaintiff],

based on the manner of use."  PTO Decision at 9.

95.    Both the TTAB and PTO contend that consumers, viewing Plaintiff's

specimens and evidence, would **only** perceive #LAW as a means to reach Morgan

& Morgan and not also as a source identifier of Morgan & Morgan's services.   *See*

*id.* at 12.

96.    There is no published authority of the PTO, including the TMEP, or

any court or TTAB decision issued prior to November 9, 2023, providing that

mnemonic/vanity telephone number marks, including those beginning with the "#"

symbol, should be treated any differently than alphanumeric telephone number

marks for registration purposes.

97.    TMEP § 904.07 provides that when, as here, a failure-to-function refusal is based on a review of a specimen of use, the examining attorney should advise the applicant that the refusal will be reconsidered if the applicant submits a substitute specimen showing use of the applied-for mark as a trademark or service mark.

98.    At no time during the multi-year prosecution of Serial No. 87/724,338 did the PTO afford Plaintiff  the opportunity to submit a substitute specimen pursuant to TMEP § 904.07.

99.    The PTO's failure to comply with its own published policy as to submission of substitute specimens of use under TMEP § 904.07, combined with its refusal to allow Plaintiff's interview request under TMEP § 709, irreparably harmed Plaintiff in its efforts to secure a Principal Register registration of the #LAW mark.  Plaintiff could have generated **any** specimen evidencing service mark use the PTO may have required or requested during the prosecution of Serial No. 87/724,338.

100.   The relevant consuming public in fact perceives #LAW both a mnemonic/vanity telephone number at which Morgan & Morgan can be reached **and** as the source of legal services and legal referral services provided by Morgan & Morgan.

## FIRST CAUSE OF ACTION

101.    Plaintiff incorporates by reference Paragraphs 1 through 100 above as if the same were fully set forth herein.

102.    The evidence of record establishes that #LAW is used both as a mnemonic telephone number and as a service mark, and the Director should be directed forthwith to pass the mark to publication.

## PRAYER OF RELIEF

Plaintiff therefore requests this Court enter judgment:

(a)    Reversing the November 9, 2022, decision of the TTAB, and directing the Director forthwith to pass the application to publication for opposition for registration on the Principal Register; and

(b)    Awarding Plaintiff such other relief as this Court may deem just and proper.

Dated: January 11, 2023                    Respectfully submitted,

                                           */s/ Benjamin A. Webster*
                                           Christopher P. Bussert
                                           Theodore H. Davis Jr.
                                           Charles R. Henn Jr.
                                           Sara K. Stadler
                                           Shreya Desai
                                           KILPATRICK TOWNSEND &
                                           STOCKTON LLP
                                           1100 Peachtree Street, Suite 2800
                                           Atlanta, Georgia 30309-4530
                                           Telephone: (404) 815-6545
                                           Facsimile: (404) 541-3144
                                           E-mail: cbussert@kilpatricktownsend.com

                                           Attorneys for Plaintiff
                                           Pound Law, LLC

                                           Damien H. Prosser
                                           Florida Bar No. 17455
                                           Benjamin A. Webster
                                           Florida Bar No. 45167
                                           MORGAN & MORGAN
                                           20 North Orange Ave, Suite 1600
                                           Orlando, Florida  32801
                                           Telephone: (407) 420-1414
                                           E-mail: dprosser@forthepeople.com
                                           E-mail: bwebster@forthepeople.com